^ (jUTÍCL, pCT
BUTLER, J.
The two first grounds present the same mi. mol giuuuuo i;jug oamc question, to wit: was the note void because it was left with Carson in blank, and filled up by him in the absence of the other parties to it ? Carson acquired his possession, control and right to the note from William Hill, who was acting not alone by derivative authority from others, but on his own account as one of the principals to the note. He had full authority to use the paper as he might think proper. The note was taken and filled up by Hill’s express authority and direction, and in good faith, for the purpose agreed on between himself and Carson. The latter had the assent of one of the principals to fill up the blank, as fully as an endorsee has the authority of his endorser to fill up the terms of endorsement above his name ; which was nothing more than making the note payable to and negotiable by himself for the amount specified by all the makers. The next question that arises is, what right did Carson acquire to the note upon or after its delivery ? Until he accepted drafts to the amount of it, he had no right to or control over it, but it was subject to the demand of the depositor. But after Carson had incurred a liability to the amount of $7500 for Hill & Davis, by accepting the drafts for that sum, he acquired as perfect a right to the note as if he had bought it, and the defendants had as little control over it as if they had given it absolutely for goods sold and delivered. From that time Carson’s title *54 could not be divested, nor the defendant’s liability discharged, without payment. The pledge, or collateral security, (call it what you may,) had become forfeited, and could only be redeemed by the payment of money equal to its amount. So far as regarded the payee, all the makers were principals; although as between themselves, Jones & Wiley Hill were securities of the other two. This relation between the makers could not affect their liability to Carson. The note could not therefore be regarded in the light of a guaranty requiring notice, as contended for by the counsel. Or if so, it would be an absolute guaranty for the payment of so much money, which would impose the same obligation as any other unconditional engagement to pay money. I think this general principle well stated in the case of Norton vs. Eastman, (4 Greenleaf, 521,) in which it was said by the Judge who delivered the judgment of the Court, “ it seems to be well settled that where a guaranty is *absolnte in its terms, and definite as to its amount and extent, in such case no notice to the guarantor is necessary ; the very act of the party in giving the guaranty is inseparably connected with the knowledge of its nature and limits. ”(a) Only where the party cannot know before hand whether he is to be ultimately liable or not, nor to what extent, is it necessary, in order to charge him, that he should have reasonable notice. Here Jones and Wiley Hill gave William Hill power to make them absolutely liable for $5000, without condition or limitation. By the understanding of the parties, they were to be equally liable, and to the same extent as Hill & Davis. After signing the paper, their ultimate liability was fixed, and they should have guarded themselves by their own vigilance, and not have relied on notice from Carson, who had given credit on an unqualified obligation to pay him, should the drafts not be paid.
Having come to the conclusion that the note was a valid obligation, and that the defendants were liable to pay, according to the terms of the paper, after it was filled up, the remaining questions arise out of the application and the extent of the credits which should have been made by Carson, and to which the defendants were entitled, by the sums of money remitted by Davis, and raised by Carson on the notes discounted in the banks. If the money remitted in cash by Davis from Laurens, had been applied to this note, or to the drafts accepted on its faith, then the defendants would have been entirely discharged. Davis & Hill, and Davis alone, owed, beyond the amount of this note, large sums, for which the plaintiff, Carson, had no security. He had paid and advanced money oil their individual responsibility. From the manner in which he kept the accounts, he applied the money received from Davis to the payment of these latter demands. Or rather, that is the result — for he did not apply the payments to the extinguishment of the specific demand covered by the note. The law seems to be clear and indisputable, that where the debtor does not direct the application of money paid, to any particular demand, where there are two or more, the creditor who receives the money may make his own application. When Davis remitted money he gave no particular direction about it; but, perhaps, believing he could pay all demands against him, he left it to Carson to make the ^application of the credits as he might think proper. Carson consulted his interest, *55 and applied the payments to the more insecure debt. And this we think he had a right to do according to law, if he acted in good faith and without fraud or collusion with Davis, of which there was not even a suspicion. Allowing this to be so, still the defendants insist that they ought not to be debited with the sums subsequently paid into the banks by Carson, after he had received and given Davis credit for them. That is, the credit when once made, was absolute and beyond Carson’s control. And that when he paid the money into bank, after protest, he could not debit the amount against the credit previously given. It is admitted that the money raised on the notes discounted, was drawn on accommodation paper for the benefit of Hill and Davis The first was endorsed by Carson alone, and there is little doubt that it was discounted in bank more on the credit of his name than those of Hill and Davis, the makers. This being the case, Carson might well have charged them with this liability at the time he gave the credit. To test it, suppose the defendants, or either of them, should have come the day after the credits were made, and demanded the note upon which this action is brought, could they have obtained it without relieving Carson from his liability to the bank ? I think they could not. Justice and fair dealing would forbid it. And if they could get the note without paying the amount credited to it, and for which Carson was liable, the credit would be unavailing to them. Carson could not be divested of his title to the note until it was discharged of all its incumbrances The money, therefore, paid to the South Carolina Bank in satisfaction of the note discounted in it, may well be set off on the debit side of the account; the debit neutralizing the credit; the one being received, and the other paid, for Davis and Hill, by Carson, without benefit to him, beyond commissions. The money raised on the note endorsed by Rogers, must be regarded in the same light. [The money thus raised was not for Rogers or Carson, but for Davis and Hill; and when Carson paid the renewals he was not bound to look exclusively to Rogers for indemnity. Davis and Hill were the principals, and Rogers security, as between themselves, but all were liable to Carson ; and the money when paid was for the real and ultimate benefit of the makers ; and they having got credit for the *money received, they should be debited with it when paid. Allowing these items to be just debts to countervail the previous credits, the balance, as struck by Carson, was three thousand seven hundred and twenty-eight dollars, for which the jury were instructed to find their verdict with interest. And the Court is satisfied that the defendants could not, at any time, have redeemed their note without paying this sum. The verdict was therefore right, and cannot be set aside on any of the grounds noticed.
Another ground is taken, that the plaintiff gave indulgence to Hill and Davis, the principals, and at the same time aided them in removing their effects from the State, without notice to defendants. This suggests the inquiry, what indulgence did the plaintiff give, and for what purpose ? The plaintiff, at the instance of one of the defendants, Davis, did forbear to sue. But he entered into no obligatory contract for forbearance. There was no contract between himself and Davis that would impose any impediment to his suing at any time that he might think proper. He gave Davis time ; without any consideration or agreement, that could constitute a new and separate contract from that which arose *56 from the note itself. There was no promise to indulge or forbear which was binding on the creditor. The law is very clear, that the surety is bound by the terms of the contract, and cannot be discharged unless the principal varies the terms of the original contract, by enlarging the time of performance. (2 J. C. R., 559.) There was nothing to prevent Carson from suing at any time, by virtue of any agreement which he had entered into with Davis. As to receiving and forwarding the goods of Davis and Hill, he had as perfect a right to do so, as of any other customer in good credit. He certainly had no authority to stop them for any one, much less for Wiley Hill and Jones, who lived near the place from which they were transported. He acted for Hill and Davis as a mere forwarding agent, and cannot be held responsible for not interposing to attach or arrest their goods for the benefit of others.
Irby and Young, for the motion. Henry and Wardlaw, contra.
We cannot perceive any grounds to grant a new trial. Motion refused.
Rtcííardsox, O’Neal, Evans, and Eajile, JJ., concurred : G-antt, J., dissented.

 See Lawton vs. Maner, 9 Rich. 337. An.